

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ROBERTA SCHWARTZ, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| | ) | Judge _____ |
| MERRILL LYNCH, PIERCE | ) | |
| FENNER & SMITH, INC., A.K.A. | ) | |
| MERRILL LYNCH & CO., INC. | ) | |
| | ) | |
| Defendant | ) | |

FEB 0 2 2009
U.S.D.C. S.D. N.Y.
CASHIERS

## PLAINTIFF ROBERTA SCHWARTZ'S
## PETITION TO VACATE ARBITRATION AWARD

Plaintiff, Roberta Schwartz ("Schwartz" or "Plaintiff"), by her attorneys,[1] pursuant to the Federal Arbitration Act, respectfully requests that this Court vacate the Arbitration Decision and Award ("Award") issued on November 4, 2008. 9 U.S.C. §10 (2005).  See Ex. 1. Decision and Award.

### PARTIES

1.    Schwartz has been employed as a financial advisor at Defendant's Garden City, New York office since 1980.

2.    Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc., a.k.a., Merrill Lynch & Co., Inc., ("Merrill Lynch") is a full service securities firm engaged in the retail and institutional sale of securities, options contracts and various other financial products.  Merrill Lynch is the country's largest provider of brokerage and brokerage-related services.

---

[1]This petition is being signed by Shona Glink an attorney duly licensed to practice law in this Court.  Ms. Glink will move shortly to admit *pro hac vice* the attorneys of record in the underlying arbitration who are familiar with the facts alleged herein.

## FACTUAL ALLEGATIONS

3.      In 1997, a putative class action lawsuit was filed against Merrill Lynch, *Cremin et. al. v. Merrill Lynch, et. al.,* charging that the firm engaged in a nationwide pattern and practice of sex discrimination against its female employees. The *Cremin* lawsuit was settled in 1998.

4.      According to the terms of the Stipulation of Settlement, class counsel conducted a statistical hearing on the class wide evidence.  Class members were able to file individual claims against Merrill Lynch in the Claim Resolution Process ("CRP") and rely on the class wide evidence.

5.      An Employment Dispute Resolution Program ("EDR") was created as part of the injunctive relief in the *Cremin* settlement.  The purpose of the program is to provide a procedure for resolving future discrimination claims between Merrill Lynch and its employees.  The program rules allow for employees to select between private arbitration, industry arbitration and federal court for the resolution of post-*Cremin* claims.  The Rules and Procedures of the EDR mandate that arbitrators must follow federal law when resolving federal discrimination claims.

6.      Schwartz was a class member of the *Cremin* lawsuit and filed a claim in March 1999.

7.      In 2001, Schwartz settled her claims in *Cremin* based on Merrill Lynch's commitment to eliminate discrimination within the Firm.  Schwartz believed that Merrill Lynch's new policies would remedy the discrimination she had experienced.  However, following her settlement in *Cremin,* Merrill Lynch continued to subject Schwartz to new discrimination and retaliation for participating in the class action.

8.      Accordingly, in December 2004, Schwartz filed a complaint against Merrill Lynch.  In the EDR, she charged, among other things, that Merrill Lynch discriminated against her by subjecting her to a hostile work environment, denying her resources including account distributions, denying her equal opportunities to team and denying her managerial and administrative support.

9.      A key component of Schwartz's claim was that Merrill Lynch's account distribution policy itself was intentionally discriminatory because it ranked financial advisors and distributed accounts intentionally relying on production which has been tainted by the Firm's historical discrimination against women.  See Ex. 2, Amended Statement of Claim at ¶ 30.

10.     The parties agreed to submit Schwartz' claim to arbitration through JAMS, a provider of alternative dispute resolution process and subsequently agreed to a single arbitrator.

11.     After years of litigation, on October 2, 2007, Merrill Lynch requested a three-person panel.  On November 9, 2007, JAMS appointed two additional arbitrators.

12.     Merrill Lynch subsequently requested that JAMS strike one of the additional arbitrators and appoint a substitute.  On November 26, 2007, JAMS appointed Hon. John C. Lifland ("Arbitrator. Lifland") as the third arbitrator.  Schwartz was not given the opportunity to strike or request that Arbitrator Lifland be excluded from the panel.

13.     The hearing was conducted on May 12-16 and August 18-21, 2008.  Consistent with her theory that the account distribution policy constituted present discrimination, Schwartz submitted a witness and exhibit list, which sought to introduce evidence of discriminatory acts that occurred prior to April 2001.

14.     Merrill Lynch objected to this evidence.  Prior to the hearing, it submitted a Hearing Memorandum where it argued that the Supreme Court's decision in *Ledbetter* compelled

exclusion of evidence and claims which occurred prior to April 2001.[2] *Ledbetter v. Goodyear Tire,* 127 S.Ct. 2162 (2007). Merrill Lynch additionally submitted a Motion *in Limine*, where it re-iterated that the Panel should exclude all testimonial and documentary evidence related to acts that occurred prior to 2001.

15.    During the first day of the hearing, the Panel ruled in Merrill Lynch's favor, excluding a substantial portion of the evidence that Schwartz intended to present in support of her claim.

16.    The exclusion of this evidence was contrary to precedent from the Supreme Court, which, holds that even so-called "time-barred" evidence of discrimination may be relevant and admissible as background evidence. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). This, in itself, is sufficient reason to vacate the Award.

17.    Importantly, however, on January 29, 2009, the President of the United States signed into law the Lilly Ledbetter Act of 2009, which expressly overturned the Supreme Court's decision in *Ledbetter v. Goodyear Tire,* 127 S.Ct. 2162 (2007). The new Act allows for recovery of back pay for up to two years preceding the filing of a charge, where the unlawful employment practices that occurred during the charge filing period are similar to unlawful employment practices that occurred outside the charge filing period. *See* Ex. 2, Lilly Ledbetter Fair Pay Act of 2009.

---

[2] Merrill Lynch additionally argued that the Panel should exclude evidence of acts that occurred prior to April 2001 because Schwartz signed a settlement agreement where she released Merrill Lynch of claims that accrued prior to that date. Schwartz agrees that due to the settlement agreement she wouldn't be able to *recover* for acts that accrued prior to April 2001. However, the settlement agreement has no bearing on the question of whether evidence of acts that transpired prior to April 2001 should have been admitted to show that Merrill Lynch's account distribution policy constituted discrimination during the actionable liability period of this case.

18.     The Lilly Ledbetter Fair Pay Act applies retroactively – "it takes effect as enacted on May 28, 2007" and applies "to all claims of discrimination in compensation under Title VII of the Civil Rights Act of 1964. . . that are pending on or after that date." *Id.*

19.     The Panel's ruling to exclude a significant portion of Schwartz's evidence is clearly contrary to the new Act and thus should be vacated.  The ruling was prejudicial to Schwartz who expressly sought to introduce evidence that Merrill Lynch's present distribution of accounts was unlawful because it distributed resources during the liability period based on rankings that rewarded men who were treated more favorably in the past.  Schwartz believes that she would have been able to obtain a different result altogether had she been able to introduce the evidence she sought to present.

20.     As just one example, Schwartz sought to introduce Merrill Lynch's own internal studies as well findings and expert reports in a number of well-publicized legal proceedings, to show that Defendant was well aware of the compensation disparities between men and women financial advisors and other negative employment ratings (such as their lower levels of production and overrepresentation in lower quintiles of production), yet intentionally used these ratings to distribute resources.

21.     Moreover, the Panel's decision to disallow evidence pre-dating 2001, seems contrary to an opinion by the Hon Judge Ruben Castillo (Judge Castillo) of the Northern District of Illinois, the federal court judge who was assigned to the *Cremin* case.  In 2004, an arbitration panel ruled in favor of *Cremin* class member Hydie Sumner.  In reaching this award, the *Sumner* Panel held Merrill Lynch liable for gender discrimination on both the class and individual claims.  Specifically, the *Sumner* Panel ruled that:

> **[T]he record clearly and convincingly supports Sumner's allegations of a pattern and practice of gender discrimination adversely affecting the pay of**

**female FC's.** The class-wide statistical evidence demonstrates gross disparities in earnings between male and female FC's. ...

\*\*\*

**Having considered the class-wide statistical evidence and reports and testimony of experts, the [P]anel finds that these statistically significant disparities in earnings between male and female FC's are not explained by non-discriminatory factors. Rather, the Panel finds that the disparate earnings of females and males were the result of Merrill's discriminatory practices** including, but not limited to an unequal distribution of accounts to female FC's (see Dr. Madden's report and testimony) and a male-dominated organizational structure at Merrill which created an environment in which managerial discretion was influenced by gender stereotypes adversely affecting female FC's ([s]ee reports of Dr. Bielby and Dr. Fiske). ...

\*\*\*

[T]he Panel finds that the record clearly supports Sumner's allegations of class-wide discrimination against female FC's with respect to promotions to management positions.

22.     In August 2004, Judge Castillo reviewed the above class wide findings and held that they met the Seventh Circuit's collateral estoppel standards. Notwithstanding Judge Castillo's ruling, the arbitrators in the Schwartz matter disallowed any evidence that pertain to the *Cremin* time period.

23.     The exclusion of this evidence was prejudicial to the Schwartz because the evidence buttressed and corroborated her claim that Merrill Lynch discriminated against her during the actionable period.

24.     The Court should vacate the Award because the decision to exclude the evidence is contrary to the Supreme Court's decision in *Morgan* as well as the recently passed Lilly Ledbetter Fair Pay Act of 2009.

25.     Additionally, the Court should vacate the Award based on the misconduct on the part one of the panelists during the hearing.

26.     Schwartz's witness list was tendered on April 4, 2007 -- months prior to the hearing.

27.     The witness list disclosed that Schwartz intended to call Tom Isaacs ("Isaacs"). Isaacs was a key witness because he was accused of perpetuating some of the discriminatory behavior against Schwartz. He also held the highest managerial position in Schwartz's branch.

28.     During the course of the hearing, it became clear to Arbitrator Lifland that his lifelong friend and college roommate worked for Merrill Lynch and reported to Isaacs. Instead of disclosing this fact to the lawyers as the EDR rules require[3], during a break after Schwartz had completed Isaacs' cross examination, but before Isaacs was re-directed or completed his testimony, Arbitrator Lifland extended his hand to Isaacs, disclosed the relationship and engaged in a conversation about his friend with the witness which concluded by Isaacs telling Arbitrator Lifland that his friend was "one of the great Americans."

29.     Arbitrator Lifland then judged Isaacs as a credible witness. Indeed, the majority decision concludes: "Claimant complains about the formation of [a team]. Tom Isaacs was the manager of the Garden City office and therefore responsible for approving its formation. None of the team members testified but Isaacs did, *and credibly*." See Ex. 1 at 7.

30.     What is most disturbing about this conduct is that Arbitrator Lifland is a retired federal judge who certainly knows that such conduct would never occur in federal court. He agreed to participate in the Arbitration knowing that the parties expected the proceedings to mimic federal law and to ensure fairness to the parties and no appearance of impropriety. Fundamental fairness dictates that an arbitrator should not befriend the alleged discriminator in

---

[3]Section III, paragraph 16(d) of the EDR rules state that:

Each appointed arbitrator shall disclose . . . (ii) any existing or past financial, business, professional, family, or social relationships that . . . might reasonably create an appearance of partiality or bias, including any such relationships that he or she personally has with . . . any individual whom she or he knows that will be a witness. . . . The obligation of the arbitrator(s) to make all disclosures that are mandated ... will continue throughout the arbitration process.

the middle of his testimony through an off the record ex-parte communication.  No sitting federal judge would engage in this misconduct.

31.     After learning of the personal connection between Arbitrator Lifland and Isaacs, Schwartz's attorneys brought the matter to the attention of the Chairperson, made a charge that Arbitrator Lifland had engaged in misconduct and expressed a concern for retaliation.[4]

32.     Unfortunately for Schwartz, Arbitrator Lifland's misconduct only intensified after Schwartz complained to the Chairperson.  Arbitrator Lifland became openly hostile towards Schwartz.  He disallowed evidence offered in support of Schwartz's claims while allowing similar evidence to support Defendant's claim.  Arbitrator Lifland also acted in an openly disrespectful way towards Schwartz and her counsel often cutting-off crucial testimony being presented by Schwartz, raising his voice and expressing impatience with the proceedings.

33.     In the end, Schwartz lost a close decision with the Chair of the panel dissenting. The dissent found that Schwartz' branch manager discriminated against her in violation of Title VII of the Civil Rights Act of 1964 and the New York Human Rights Law and caused distress and loss of compensation.  In particular, the Chair found that Schwartz was discriminated against in the distribution of accounts and that while the record was "replete with examples of male FAs being advantaged in the distribution of assets" it was "devoid of examples in which [Schwartz' branch manager] used the account distribution policy or exercised his managerial discretion to benefit a single female FA."  Ex. 1 at p. 22.

---

[4] The EDR rules establish that when a panel of three is at issue, one of the panelists is designated as the Chairperson.

WHEREFORE, for the above stated reasons, Schwartz requests that this court vacate the Decision and Award issued on November 4, 2008.

Dated:  February 2, 2009                    Respectfully submitted,

_____
Shona B. Glink

Shona B. Glink (SG8714)
**MEITES, MULDER, MOLLICA & GLINK**
20 S. Clark Street, Ste. 1500
Chicago, IL 60603
(312) 263-0272