UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
ROBERTA SCHWARTZ,                          :

                                           :        09 Civ. 900 (WHP)

                    Petitioner,            :
                                                    MEMORANDUM & ORDER
        -against-                          :

MERRILL LYNCH & CO., INC.,                 :

                                           :

                    Respondent.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _2_/8_/2010_

        Petitioner Roberta Schwartz ("Schwartz") brings this action to vacate an

arbitration award (the "Final Award") in favor of Respondent Merrill Lynch & Co., Inc.

("Merrill Lynch").  Because Schwartz fails to set forth any legitimate grounds for vacating the

Final Award, Schwartz's petition is denied.


                                    BACKGROUND

        Schwartz has been employed as a financial advisor at Merrill Lynch since 1980.

(Petition to Vacate dated Feb. 2, 2009 ("Pet.") ¶ 1.)  Financial advisors are paid on commission.

(Pet. Ex. 1: Decision and Award in Schwartz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.

dated Nov. 4, 2008 ("Final Award") at 4.)  When a financial advisor leaves Merrill Lynch, her

clients and the management of their assets are reassigned to other advisors under the Account

Distribution Policy (the "ADP").  (Final Award at 4; Pet. Ex. 2: Amended Statement of Claim

("Amend. Statement") ¶¶ 21-23.)  The ADP ranks all advisors in a particular office on the basis

of their education, recognition, clubs, revenue generated, new assets, and annuitized assets.

(Amend. Statement ¶ 22.)  Financial advisors commonly work in teams.  (Amend. Statement ¶ 35.)  When a team member departs, her clients often shift to another member of the team, rather than through the ADP.  (Final Award at 4.)

In 1998, Merrill Lynch settled a class action gender discrimination suit (the "Cremin Settlement").  See Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 328 F. Supp. 2d 865, 866 (N.D. Ill. 2004) (detailing litigation's history); 957 F. Supp. 1460 (N.D. Ill. 1997). Schwartz was a member of the Cremin class.  (Pet. ¶¶ 6-7.)  In Cremin, the plaintiffs alleged that Merrill Lynch's male-dominated culture and organizational structure led managers to disproportionately distribute brokerage accounts to men.  (Pet. ¶ 3.)  As part of the Cremin Settlement, Merrill Lynch established a Claims Resolution Process ("CRP") through which female financial advisors could pursue their damages claims in mediation or arbitration.  (Pet. ¶ 4.)  In 2003, Merrill Lynch amended the ADP to eliminate manager discretion over the distribution of client assets.  (Final Award at 4.)

Under the Cremin Settlement, Schwartz released all claims against Merrill Lynch "occurring up to April 2, 2001."  (Plaintiff's Memorandum of Law in Support of Petition to Vacate Arbitration Award ("Pet. Mem.") Ex. 5: Settlement Agreement and Mutual Release dated Apr. 2, 2001 ("Settlement and Release") at 2.)  In December 2004, Schwartz filed a gender discrimination complaint against Merrill Lynch, which was submitted to arbitration through JAMS, a provider of alternative dispute resolution.  (Pet. ¶¶ 8, 10.)  The parties agreed to proceed before a single arbitrator.  (Pet. ¶ 10.)

In her arbitration complaint, Schwartz alleged Merrill Lynch's ADP discriminated against women because men were always ranked higher after years of discrimination bestowed

-2-

them with larger client accounts. (Pet. ¶ 9; Amend. Statement ¶ 30.) Second, Schwartz claimed

that two branch managers, Thomas Isaacs ("Isaacs") and Ralph DeSalvo ("DeSalvo"), allowed

male advisors to form "sham" teams so that assets of departing team members would succeed to

other men, rather than through the ADP. (Amend. Statement ¶ 24.) This, in turn, allowed men

to earn higher scores under the ADP, which only caused further inequity in the distribution of

assets. (Amend. Statement ¶ 24.)

   In April 2005, the single arbitrator Carol Wittenberg ("Arbitrator Wittenberg")

found the Cremin Settlement barred Schwartz's claims arising before her April 2, 2001 release.

(Declaration of Carole Miller dated Apr. 30, 2009 ("Miller Decl.") Ex. C: Order signed by Carol

Wittenberg dated Apr. 6, 2005.) After several delays in the proceedings, Merrill Lynch

requested additional arbitrators be appointed to create a three-person panel. (Pet. ¶ 11.) Two

former federal judges, John Lifland ("Arbitrator Lifland") and Diane Welsh ("Arbitrator

Welsh"), joined to form the JAMS Panel (the "Panel"). (Pet. ¶¶ 11-12; Pet. Mem. Ex. 14: JAMS

Letter dated Nov. 9, 2007 & Ex. 15: JAMS Letter dated Nov. 26, 2007.)

   Between May and August 2008, the Panel heard nine days of evidence. (Pet. ¶

13.) When Schwartz sought to introduce evidence of discriminatory acts that occurred prior to

April 2001, Merrill Lynch filed a motion to exclude such evidence. (Pet. ¶¶ 13-14.) During the

first day of arbitration, the Panel ruled in Merrill Lynch's favor and excluded testimony and

exhibits related to acts occurring prior to April 2001. (Pet. ¶¶ 14-15.)

   That same day, Arbitrator Lifland conversed with Merrill Lynch branch manager

Isaacs. (Pet. ¶¶ 25-28.) According to an attorney for Schwartz who witnessed the conversation,

Isaacs told Lifland that he had supervised and managed one of Lifland's college roommates.

(Pet. ¶ 28.) The conversation concluded with Isaacs characterizing Arbitrator Lifland's friend as "one of the great Americans." (Pet. ¶ 28.) Schwartz's lawyer expressed his concern over the conversation to Arbitrator Wittenberg, who chaired the Panel, but did not lodge an objection on the record. (Pet. ¶ 31.)

In the Final Award, the Panel confirmed Arbitrator Wittenberg's earlier decision to bar claims arising before April 2001 and found in favor of Merrill Lynch on all claims. (Final Award at 2, 21.) The Panel was unanimous in its conclusion that Isaacs did not discriminate against Schwartz. (Final Award at 21.) Arbitrators Lifland and Welsh further concluded that DeSalvo also committed no acts of discrimination. (Final Award at 21.) Arbitrator Wittenberg dissented on this finding. (Final Award at 21-28.) The Decision makes no mention of the conversation between Issacs and Arbitrator Lifland.

Schwartz moves to vacate the arbitration because (1) Arbitrator Lifland's ex parte conversation with Isaacs constituted misconduct and prejudiced Schwartz; and (2) the Panel improperly refused to hear or consider evidence of Merrill Lynch's pre-April 2001 discrimination and barred pre-April 2001 claims.

## DISCUSSION

### I.  Legal Standard

Section 10 of the Federal Arbitration Act (the "FAA") sets forth four narrow circumstances under which judicial vacatur of an arbitral award is appropriate. See 9 U.S.C. § 10(a). An award may be vacated where (1) it was procured by corruption, fraud, or undue means, (2) the arbitrators were partial or corrupt, (3) the rights of a party were prejudiced by the

-4-

misconduct of the arbitrators, or (4) the arbitrators exceeded or misused their powers.  9 U.S.C. §

10(a); Hall Street Assocs., L.L.C. v. Mattel, Inc, 128 S. Ct. 1396, 1402 (2008).  In addition to the

statutory grounds codified in the FAA, an arbitration award may be vacated if it is in "manifest

disregard of the law."  See Stolt-Nielsen v. AnimalFeeds Int'l Corp., 548 F.3d 85, 94-96 (2d Cir.

2008).  In considering any of these grounds, a court's review is "severely limited" and "highly

deferential to the arbitral award."  See Interdigitial Comm'cns Corp. v. Nokia Corp., 407 F.

Supp. 2d 522, 529 (S.D.N.Y. 2005).

II. Bias

                An arbitration award may be set aside on the basis of evident partiality only when

"a reasonable person would have to conclude that an arbitrator was partial to one party to the

arbitration."  Hakala v. Deutsche Bank AG, No. 01 Civ. 3366 (MGC), 2004 WL 1057788, at *7

(S.D.N.Y May 11, 2004) (citing Morelite Constr. Corp. v. N.Y. City Dist. Counsel Carpenters

Benefit Funds, 748 F.2d 79, 84 (2d Cir. 1984)).  Schwartz's contention is that Arbitrator Lifland

was biased due to his "ex parte" conversation with Isaacs.

                To vacate an award on the basis of ex parte communications between a panel

member and a witness or interested party, the petitioner must make a two-part showing.  First,

the ex parte conversation must have deprived the petitioner of a fair hearing and influenced the

outcome of the arbitration.  See Spector v. Torenberg, 852 F. Supp. 201, 209 (S.D.N.Y. 1994).

Second, petitioner must show that "the subject matter of the conversation [went] to the heart of

the dispute's merits."  Spector, 852 F. Supp. at 210.

As to the first prong, there is no evidence that bias or impropriety on the part of Arbitrator Lifland—if any existed—influenced the decision. All three arbitrators ruled that Isaacs committed no acts of discrimination. Thus, Arbitrator Lifland's vote could not have altered the ultimate outcome of the arbitration. See Prozina Shipping Co. Ltd. v. Elizabeth Newark Shipping, Inc., No. 98 Civ. 5834 (LMM), 1999 WL 705545, at *5 (S.D.N.Y. Sept. 10, 1999).

In addition, nothing in the Panel's Final Award raises a reasonable inference of bias. Bradley v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 05 Civ. 9591 (LAP), 2007 WL 4325455, at *3 (S.D.N.Y. Nov. 6, 2007). There is also no evidence Arbitrator Lifland had more than a passing relationship with Isaacs, and certainly he had no relationship calling his decision into question. See Washburn v. McManus, 895 F. Supp. 392, 399 (D. Conn. 1994) ("Trivial relationships are insufficient to create a level of impropriety."). The arbitrators permitted both parties to present an extensive case with numerous witnesses and exhibits. Indeed, this Court notes that the conversation between Arbitrator Lifland and Isaacs is not even correctly characterized as ex parte because it occurred in the presence of an attorney and paralegal representing Schwartz. The affidavits of these two individuals recount that the conversation never touched on legal or procedural matters related to the arbitration. See Prozina Shipping, 1999 WL 705545, at *5 (no partiality where "factual or legal issues" were not discussed in ex parte conversation).

Finally, Schwartz's failure to put her concerns regarding Arbitrator Lifland's impartiality or behavior on the record is remarkable. "A party cannot have it both ways; [she] 'cannot remain silent, raising no objection during the course of the proceeding, and when an

-6-

award adverse to [her] has been handed down, complain of a situation of which [she] had knowledge from the first . . . her silence constitutes a waiver of the objection.'" Washburn, 895 F. Supp. at 399 (quoting Cook Indus., Inc. v. C. Itoh & Co. (Am.) Inc., 449 F.2d 106, 107-08 (2d Cir. 1971)).


III. Failure to Consider Evidence

Section 10(a)(3) of the FAA provides that the district court may vacate an award "[w]here the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). However, an arbitrator's refusal to hear evidence does not automatically require vacatur of an award: "[i]t is well settled that arbitrators are afforded broad discretion to determine whether to hear evidence." Areca, Inc. v. Oppenheimer & Co., Inc., 960 F. Supp. 52, 55 (S.D.N.Y. 1997). Here, there is no evidence the arbitrators abused their discretion or manifestly disregarded the law in deciding her claims or accepting relevant evidence.

Schwartz argues that the Panel improperly failed to consider claims and evidence in contravention of the Lilly Ledbetter Fair Pay Act of 2009 (the "Ledbetter Act"). This contention is flawed. First, the Panel decided to limit recovery on the basis of Schwartz's "full release of her claims to that date [April 2, 2001]," not because of the Supreme Court's decision in Ledbetter v. Goodyear Tire & Rubber, 550 U.S. 618 (2007). The matter ultimately was an issue of contract law and the scope of Schwartz's 2001 "full release." Indeed, the Final Award gives no attention to Ledbetter. Even assuming the Ledbetter Act overrode Schwartz's contractual release, the arbitrators issued the Final Award in November 2008, prior to the

-7-

passage of the Ledbetter Act. See Brown v. Rauscher Pierce Refsnes, Inc., 994 F.2d 775, 781-82 (11th Cir. 1993) (panel's interpretation of law must be wholly unfounded at the time it is rendered to justify vacatur); see also Sobel v. Yeshiva Univ., 839 F.2d 18, 29-30 (1988) ("[I]t is beyond question that a pending case must be decided under the law in effect at the time it is decided."). A change in the decisional law after the entry of a final award is not grounds for vacatur. See First Interregional Equity Corp. v. Otra Cleaning, Inc., No. 91 Civ. 143 (RWS), 1994 WL 364038 (S.D.N.Y. July 13, 1994).

Schwartz's remaining arguments that the Panel disregarded relevant and admissible evidence of past discrimination are unsupported by the record. "Although arbitrators must have before them enough evidence to make an informed decision, they need not compromise the speed and efficiency that are the goals of arbitration by allowing the parties to present every piece of relevant evidence." Areca, 960 F. Supp. at 55 (emphasis in original). The record shows the Panel accepted evidence of the Cremin Settlement which detailed earlier discrimination at Merrill Lynch. Moreover, the record reveals that the Panel remained flexible about accepting evidence of pre-April 2001 activities so long as it was relevant. This decision was in accord with the Supreme Court's reasoning in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). Nothing in Morgan required the Panel to consider this evidence, but the Panel did, and there is nothing to show that the Panel manifestly disregarded law in this regard.

## CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate the arbitration award is

denied, and this action is dismissed. The Clerk of Court is directed to terminate all motions

pending and mark this case as closed.

Dated: February 8, 2010
       New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of record:*

Shona Glink, Esq.
Meites, Mulder, Burger & Mollica
208 South LaSalle Street
Chicago, IL 60604
*Counsel for Petitioner*

Carole G. Miller, Esq.
Maynard Cooper & Gale, P.C.
1901 Sixth Avenue North
Birmingham, AL 35203
*Counsel for Respondent*